OPINION OF THE COURT
 

 Titone, J.
 

 In this medical malpractice action, we are called upon to determine whether a suture that was improperly affixed to an organ not involved in the operation for which plaintiff sought medical treatment constitutes a "foreign object” sufficient to delay accrual of the governing Statute of Limitations until the date that the object’s presence was or reasonably should have been discovered. Because the misplaced suture is not a "foreign object” within the rule of
 
 Flanagan v Mount Eden Gen. Hosp.
 
 (24 NY2d 427), and is more readily characterized as a "fixation device” excluded from the benefit of that rule, we conclude that the Appellate Division erred in denying defendants’ respective motions to dismiss the complaint as time-barred.
 

 In June 1971, defendant George Moront, a licensed physician, performed left hernia repair surgery at defendant Columbia Memorial Hospital on plaintiff Mark Rockefeller, who was then four years old. Seventeen years later, when plaintiff’s wife was unable to conceive, plaintiff underwent a medical examination which revealed that his semen contained no sperm. Exploratory surgery performed on plaintiff in November 1989 revealed that a suture had been permanently placed on his vas deferens, most likely during the 1971 herniorrhaphy.
 

 
 *563
 
 Plaintiff instituted this medical malpractice action against defendants Moront and Columbia Memorial in October 1990, seeking damages for his irreversible sterility and emotional distress, as well as derivative damages on his wife’s behalf.
 
 [1]
 
 Supreme Court denied defendants’ respective motions to dismiss on Statute of Limitations grounds and granted plaintiff’s cross motion to dismiss those affirmative defenses, holding,
 
 inter alia,
 
 that the action was timely because it was commenced within three years of the discovery of the misplaced suture, a "foreign object.” The Appellate Division modified, by holding that the dismissal of the Statute of Limitations defense under the "foreign object” exception was without prejudice to its reassertion if, following discovery, defendants demonstrate that there is a triable issue concerning whether plaintiffs could have reasonably discovered the malpractice "at a point in time more than three years prior to the commencement of this action.” (182 AD2d 160, 164.) The dissent voted to dismiss plaintiff’s complaint as time-barred on the ground that the "foreign object” rule is inapplicable where an object "is deliberately, albeit negligently, placed in the patient”
 
 (id.,
 
 at 165). For the following reasons, we now reverse.
 

 The limitations period for medical malpractice actions generally runs from the date of the last act constituting the basis of the claim, and not from the date of discovery of the resulting injury
 
 (Rodriguez v Manhattan Med. Group,
 
 77 NY2d 217, 220). The "foreign object” rule, first enunciated by this Court in
 
 Flanagan
 
 (24 NY2d 427,
 
 supra),
 
 provides an exception to that general principle, where an object not intended to remain is negligently
 
 "left
 
 in a patient’s body” after the completion of a medical procedure
 
 (id.,
 
 at 430 [emphasis added]). In such instances, the applicable limitations period will not commence to run "until the patient could have reasonably discovered the malpractice”
 
 (id.,
 
 at 431). We stated in
 
 Flanagan
 
 that, unlike in cases where the plaintiff’s malpractice claim is predicated on negligent "medical treatment” or practice
 
 (id.,
 
 at 431), application of a discovery rule is justified in foreign object cases because the presence of the foreign object — in that case, surgical clamps forgotten in the plaintiff’s body after surgery — did not create a danger of false or belated claims, did not "raise questions as to credibility,” and did not "rest on professional diagnostic judgment or discretion”
 
 (id.,
 
 at 431). The principles enunciated in
 
 Flana
 
 
 *564
 

 gan,
 
 which have since been codified
 
 (see,
 
 CPLR 214-a),
 
 [2]
 
 make clear that claims founded on negligent medical diagnosis or treatment should not be considered within the category of claims covered by the "foreign object” rule because they involve the evaluation of treatment decisions made by medical professionals.
 

 In determining whether an object which remains in the patient constitutes a "foreign object,” the courts should consider the nature of the materials implanted in a patient, as well as their intended function. Objects such as surgical clamps, scalpels, and sponges are introduced into the patient’s body to serve a temporary medical function for the duration of the surgery, but are normally intended to be removed after the procedure’s completion. Clearly, when such objects are left behind, no assessment of the medical professional’s expert judgment or discretion in failing to remove them is necessary to establish negligence. By contrast, items which are placed in the patient with the intention that they will remain to serve some continuing treatment purpose constitute "fixation devices”
 
 (Lombardi v DeLuca,
 
 71 NY2d 838,
 
 affg
 
 130 AD2d 632), a category of medical material that the pre-CPLR 214-a case law excludes from the "foreign object” rule, and is now explicitly excluded by the terms of that statute. That "fixation devices” were considered exempt from coverage under the judicially created "foreign object” rule prior to enactment of CPLR 214-a is confirmed by this Court’s holding in
 
 Lombardi (supra)
 
 that "[a] fixation device, in this case, suture material, intentionally placed in the body and not left there in the course of some later procedure in which it should have been removed, does not constitute a 'foreign object’, even though the claim arose prior to July 1, 1975, the effective date of
 
 *565
 
 CPLR 214-a” (130 AD2d 632,
 
 affd on mem below
 
 71 NY2d 838,
 
 supra; accord, Goldsmith v Howmedica, Inc.,
 
 67 NY2d 120, 123;
 
 Mitchell v Abitol,
 
 130 AD2d 633).
 

 We have previously rejected an argument that the negligent failure to remove a "fixation device” from a patient’s body transforms that material into a "foreign object”
 
 (see, Rodriguez v Manhattan Med. Group, supra,
 
 at 222). In so doing, we reasoned that while the "foreign object” rule applies where the negligent act of forgetting a device in the patient’s body forms the basis of the complaint, it should not be extended to cover the "very different circumstances” presented by the "failure to detect the continued presence of a previously inserted device,” a form of negligence analogous to misdiagnosis
 
 (id.,
 
 at 223). By parity of reasoning, a claim based on a medical professional’s deliberate implantation of a "fixation device” in the wrong place does not transform it into a foreign object. Such a claim is more readily characterized as one predicated on negligent medical treatment, which, like misdiagnosis, is a category of malpractice not covered by the "foreign object” rule
 
 (see, Merced v New York City Health & Hosps. Corp.,
 
 44 NY2d 398).
 

 To find negligence where an object classifiable as a "fixation device” has been deliberately implanted in the patient’s body with the intent that it remain, thé trier of fact must assess "whether the defendant physician’s diagnostic methods and conclusions were consistent with contemporary professional standards of care”
 
 (Rodriguez v Manhattan Med. Group,
 
 77 NY2d 217, 223,
 
 supra).
 
 Thus, establishing negligence in cases founded on faulty installation of a "fixation device” is clearly more difficult than where an object intended to be removed from the patient’s body at the completion of the operation is obviously forgotten there. Additionally, the presence of a clear chain of causation in cases where an object is negligently left in the patient provides a major justification for the "foreign object” exception’s discovery rule
 
 (Flanagan,
 
 24 NY2d, at 430431,
 
 supra; see also, Mitchell v Abitol,
 
 130 AD2d 633, 634). That justification is less persuasive in malpractice cases based on negligent installation of a "fixation device.” Accordingly, a claim of negligence based solely upon the ground that a "fixation device” was improperly installed or affixed during performance of an operation does not fall within the rationale of the "foreign object” exception
 
 (see, Mitchell v Abitol, supra,
 
 at 634).
 

 
 *566
 
 Applying the aforementioned principles, we conclude that the suture deliberately and permanently implanted during plaintiffs hernia operation does not constitute a "foreign object” within the meaning of the our decision in
 
 Flanagan
 
 simply because it was improperly placed on plaintiff’s vas deferens, an organ not normally associated with the particular herniorrhaphy procedure. Sutures have been consistently characterized in decisional law as "fixation devices” because they are deliberately introduced into the body and intended to perform the continuing function of securing the surgical closure
 
 (see, e.g., Lombardi v DeLuca,
 
 71 NY2d 838,
 
 affg
 
 130 AD2d 632,
 
 supra; Cooper v Edinbergh,
 
 75 AD2d 757). Moreover, plaintiff’s claim is more accurately characterized as a challenge to defendant Moront’s medical judgment and treatment — i.e., his placement of the suture — and not as one predicated on defendant’s failure to remove medical material that should have been extracted at the close of the operation. In fact, if plaintiff were permitted to proceed with this action, defendants would be called upon to justify Dr. Moront’s professional judgment and the practices he employed in providing plaintiff with medical treatment — a task which would be rendered extremely difficult due to the significant lapse in time and the attendant loss of evidence and witnesses likely to coincide with the delay
 
 (see, Flanagan,
 
 24 NY2d, at 429,
 
 supra).
 
 Manifestly, our prior decisions do not support the imposition of that burden.
 

 We are not unmindful of the harsh consequences of this ruling to plaintiff, who first discovered the misplaced suture that caused his sterility only after undergoing exploratory surgery performed 18 years after the injury-producing herniorrhaphy. However, our holding is consistent with this Court’s prior cautionary directive that the "foreign object” exception must not be broadened beyond the narrow confines announced in
 
 Flanagan (see, Rodriguez, supra,
 
 at 221-222, 224;
 
 Goldsmith v Howmedica, Inc.,
 
 67 NY2d 120, 123,
 
 supra; Matter of Beary v City of Rye,
 
 44 NY2d 398, 415). Accordingly, only in circumstances where a foreign object is negligently "left” in the patient’s body without any intended continuing treatment purpose will the discovery rule be available to delay the running of the Statute of Limitations.
 

 Because plaintiff cannot benefit from the "foreign object” exception’s date of discovery rule, and this suit was not commenced within three years of plaintiff’s eighteenth birth
 
 *567
 
 day — the date the infancy toll was removed — this medical malpractice action is time-barred.
 

 Accordingly, the Appellate Division order should be reversed, with costs, the defendants’ motions to dismiss the complaint granted and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa and Smith concur.
 

 Order reversed, etc.
 

 [1]
 

 . The derivative claims of plaintiffs wife are not before this Court.
 

 [2]
 

 . Since the alleged act of malpractice occurred in 1971, plaintiff’s action is not governed by CPLR 214-a, which establishes a 2ti-year Statute of Limitations for medical malpractice occurring on or after July 1, 1975. Rather, the timeliness of plaintiff’s suit is governed by the three-year limitations period for medical malpractice actions set forth in CPLR 214 (6) and the decisional law interpreting the foreign object rule as enunciated in
 
 Flanagan v Mount Eden Gen. Hosp. (supra).
 
 Further, because plaintiff was an infant at the time that the alleged malpractice occurred, the accrual of this cause of action was tolled until February 25, 1985 — plaintiff’s eighteenth birthday
 
 (see,
 
 CPLR 105 [j]) — under the infancy toll of CPLR 208. Accordingly, because plaintiff’s action was commenced in October 1990, it is barred by the applicable three-year Statute of Limitations unless plaintiff can establish that the suture constituted a foreign object. If the foreign object rule applies, this action, commenced within one year of its discovery in 1989, would be timely.